IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| BEVERLY HILBURN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 06-6096-HO |
| | ) | |
| v. | ) | <u>ORDER</u> |
| | ) | |
| ENCORE RECEIVABLE MANAGEMENT, | ) | |
| INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

    Plaintiff alleges claims for violation of the Fair Debt Collection Practices Act, negligence, defamation, invasion of privacy, and intentional infliction of emotional distress against defendants Sears, Roebuck and Company, Citibank USA NA, Alegis Group, and Encore Receivable Management, Inc.

    Plaintiff specifically alleges as follows:

    Plaintiff owed a debt to Sears for items she purchased and charged to her Sears charge account ("account" or "the account").
    Plaintiff became disabled and Sears Credit Protection Plan paid the entire balance of the account.
...
    Plaintiff owes no money to any Defendant.
    Citibank has acquired the account from Sears.
    Citibank and/or Sears sold to a trust the rights to payment of all alleged debts owed by Plaintiff.

>      Citibank has retained the right to collect payment from Plaintiff.
>      Citibank has reported to the collection agencies that Plaintiff has an outstanding balance on the account.
>      Plaintiff has disputed to every Defendant that she has an outstanding balance on the account; however, each Defendant has attempted to collect from Plaintiff after she disputed owing any amount without Defendant verifying the validity of the debt.
>      On or about December 7, 2004 Plaintiff's son suffered a heart attack in Plaintiff's home.
>      When Plaintiff was attempting to dial '911' Citibank telephoned Plaintiff.
>      Plaintiff informed Citibank that she could not speak to December 2004 collection agency because she needed to call 911.
>      After Plaintiff hung up on Citibank and before she could dial 911, Citibank called Plaintiff again to collect on the account, interfering with Plaintiff's ability to obtain medical help for her dying son.
>      Plaintiff's son died before the ambulance arrived.
>      During the following days while Plaintiff's family would visit to mourn Plaintiff's son's death, Citibank would call repeatedly with the intention of annoying and harassing Plaintiff in an attempt to collect on the account.
>      Defendant, Encore, has threatened to have Plaintiff criminally prosecuted and jailed if she did not pay the account.
>      Due to the actions of each Defendant, Plaintiff has suffered severe emotional distress.
>      Defendant Alegis has been sold, assigned or otherwise transferred the right to collect the alleged debt from Plaintiff.
>      Defendant Alegis has been informed that Plaintiff does not owe the debt it is attempting to collect, yet Alegis continues to attempt to collect the debt by assigning the debt to different collection agencies.

First Amended Complaint (#43) at ¶¶ 9-26.

Plaintiff alleges the Alegis' action assigning plaintiff's debt to collections when it had knowledge that plaintiff owed no debt is a violation of the Fair Debt Collection Practices Act

2 - ORDER

(FDCPA) and invasion of privacy by intruding on plaintiff's seclusion. First Amended Complaint at ¶ 35.

Defendant Alegis Group, L.P.[1] moves to dismiss plaintiff's claims against it or in the alternative for summary judgment on all of plaintiff's claims against it. Because Alegis' motion requires consideration beyond the four corners of the complaint, dismissal is inappropriate. As discussed below, summary judgment is premature given the lack of discovery at this point in the proceedings.

A.  FDCPA Claim

The complaint does not recite specific sections of the FDCPA alleged to have been violated. Plaintiff alleges violation based on assigning plaintiff's debt for collection when Alegis had knowledge that no debt was owed.

Attached to plaintiff's original complaint as Exhibit A is a letter from Sears Credit Protection Plan that plaintiff alleges shows that the entire balance of her account was paid and that she owes no debt. However, the letter is vague as to whether there is any balance left owing on the account and could reasonably be read to indicate a debt still owing:

> On the date of loss, 07-30-01, your account balance was $1491.27. We paid that balance in full as of 07-18-04, and payments ceased at that time....

---

[1] Now known as Resurgent Capital Services L.P.

3 - ORDER

> The Certificate of insurance does not provide for payment of finance charges. Nevertheless, on 07-18-04 we did pay an additional $731.61. This amount, the full finance charge billed on your 07-30-01 balance, was issued as an additional courtesy.
>
> However, only the balance from the date of the loss is included in this claim; you will need to make separate payments for any purchases you made after 07-30-01. Our records indicate that your remaining balance is due to purchases made after 07-30-01. Premium is now being billed to your account based on your current balance, as the policy remains in effect in the event of a new loss. For information on purchases made after 07-30-01, please check your old billing statements or call Sears billing office at 1-800-669-8415 to request an itemization of your account.

Ex A (attached to original Complaint (#1)) at p. 1.

Alegis asserts that plaintiff owes a debt and thus that there is no violation of the FDCPA. Alegis further contends that, even if no debt is owed, it is entitled to rely upon information it receives from the creditor that placed the account with it, and that it never personally contacted plaintiff.

Alegis alleges that the very document upon which plaintiff relies to support her claim that the debt was paid in full actually shows that plaintiff does owe money on the account. Moreover, defendant submits the Sears Itemization Report (attached to the affidavit of John Shinovich (attached to #57) to show that plaintiff owed $1299.52 as of April 28, 2005. Nonetheless, plaintiff contends that regardless of whether she owes a debt (and she submits she does not) her claim does not turn on whether a debt was owed.

4 - ORDER

Plaintiff contends that Alegis hired several collection agencies[2] to collect the debt from plaintiff and contends that Alegis is vicariously liable for the actions of these agencies. However, plaintiff only cites cases in which a debt collector has been found to be vicariously liable for the actions of its attorney. See Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507, 1516 (9th Cir. 1994) ("we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken"); Newman v. Checkrite California, 912 F.Supp 1354, 1370 (E.D. Cal. 1995) ("The FDCPA is silent on the issue of vicarious liability.  In this circuit, however, it is established that, under the FDCPA, a debt collector may be found vicariously liable for the conduct of its attorney"). Plaintiff nonetheless, seeks to hold Alegis liable for indirectly attempting to collect the debt by assigning the debt to other debt collectors. See 15 U.S.C. § 1692a(6) ("The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."); 15 U.S.C. § 1692e(8) (A debt collector may not communicate or threaten to communicate to any person credit

---

[2]In the briefing, plaintiff only identified defendant Encore. At oral argument, plaintiff also identified former defendants United Collections Bureau and LVNV Funding, LLC as collection agencies hired by defendant Alegis to recover the disputed debt from plaintiff.

5 - ORDER

information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed). Accordingly, plaintiff asserts that Alegis violated the FDCPA by communicating, apparently to Encore, United Collections, and LVNV, that the debt was not disputed which it knew to be false and that a debt was owing which, plaintiff contends, is not true.

Alegis argues that it was not aware that plaintiff was disputing the debt. Alegis contends it only had the information provided by Sears that the account was due and owing. Plaintiff also argues Alegis is strictly liable for violations of section 1692e. Alegis relies on the bona fide error defense to the extent any debt was not owed or there is any issue of whether the debt was in dispute. See 15 U.S.C. § 1692k(c).

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.
>
> As our colleagues in other circuits have concluded, this broad language seems to make the FDCPA a strict liability statute. See Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1238-39 (5th Cir. 1997); Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996); see also Irwin v. Mascott, 112 F.Supp.2d 937 (N.D.Cal. 2000); Pittman v. J.J. Mac Intyre Co. of Nevada, Inc., 969 F.Supp. 609(D.Nev. 1997); Kuhn v. Account Control Technology, Inc., 865 F.Supp. 1443, (D.Nev.1994).
>
> Latching onto that conclusion, the Seventh Circuit has held that "§ 1692e applies even when a false representation was unintentional." Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); see also Turner

6 - ORDER

v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 995 (7th Cir. 2003) (holding unintentional misrepresentation that debtor was obligated to pay a debt discharged in bankruptcy violated FDCPA); Patzka v. Viterbo College, 917 F.Supp. 654, 658-59 (W.D.Wis. 1996) (holding that an attempt to collect fee prohibited by law and threat to take action that could not be taken legally violated FDCPA). The Second Circuit has adopted a similar position. See Russell, 74 F.3d at 33, 36 (holding that sending contradictory notices violated FDCPA even though plaintiff did not offer proof of intent); Cacace v. Lucas, 775 F.Supp. 502, 505-06 (D.Conn.1990) (holding that an overstatement of debt "that was a mistake" violated FDCPA).

We agree with the Second and Seventh Circuits. Requiring a violation of § 1692e to be knowing or intentional needlessly renders superfluous § 1692k(c). See, e.g., Security Pac. Nat'l Bank v. Resolution Tr. Corp., 63 F.3d 900, 904 (9th Cir.1995) ("We must avoid a construction which renders any language of the enactment superfluous."); Hearn v. W. Conference of Teamsters Pension Tr. Fund, 68 F.3d 301, 304 (9th Cir. 1995) ("Only where a sensible result isn't reachable may we resort to the drastic step of ignoring ... statutory language ....") .... Instead, intent is only relevant to the determination of damages. Taylor, 103 F.3d at 1238, 1239("the fact that violations were innocuous and not abusive may be considered only in mitigating liability, and not as defenses"); Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 63 (2d Cir.1993) ("the degree of a [debt collector's] culpability may only be considered in computing damages"). We are convinced that this reading of the FDCPA is more in harmony with the remedial nature of the statute, which requires us to interpret it liberally. Cf., e.g., Eby v. Reb Realty, Inc., 495 F.2d 646, 650 (9th Cir. 1974) (concluding the remedial purpose of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., required liberal construction); accord Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 2002) ("Because the FDCPA ... is a remedial statute, it should be construed liberally in favor of the consumer.").

Clark v. Capital Credit & Collection Services, Inc. 460 F.3d 1162, 1175-76 (9th Cir. 2006).

7 - ORDER

Section 1692k(c) provides a narrow exception to strict liability and the defendant bears the burden of proof at summary judgment. Id. at 1177.[3] Plaintiff argues that each debt collector that was employed by Alegis was informed that plaintiff did not owe the debt they attempted to collect. However, plaintiff provides no evidence that Alegis was actually informed of this other than speculation that Encore must have informed Alegis of this fact based on Section 1692e(8). However, the FTC commentary demonstrates that if a debt collector knows that a debt is disputed by the consumer and reports it to a credit bureau, he must report it as disputed and thus the requirement to report is only triggered when reporting to a credit reporting agency, not another debt collector. See 53 Fed. Reg. 50106 (Dec. 13, 1998); see also Black v. Asset Acceptance, LLC, 05-1588 (N.D. Ga. December 9, 2005) (attached to #67). Plaintiff does not offer any evidence that she also contacted Alegis to report the dispute. She only notes that she contacted each debt collector that contacted her. As noted above, the letter that plaintiff claims demonstrates she did not owe a debt could also be read to show she did still owe. The information Alegis received from Sears indicates that a debt was

---

[3]Plaintiff appears to mistakenly believe that strict liability forecloses this defense. The Clark opinion is confusing on the issue because it uses the term strict liability. However, the discussion focused on who has the burden of proof and the court concluded that plaintiff does not have to prove intent, but that a defendant may raise bona fide error as an affirmative defense to an alleged section 1692e violation.

8 - ORDER

owed.  However, plaintiff shall be permitted an opportunity to conduct discovery to determine whether Alegis received information of the dispute from the debt collectors it hired to collect from plaintiff.  At this stage of the proceedings, it is inappropriate to make a determination as to whether the alleged violation of section 1692e was not intentional and resulted from a bona fide error.  The motion to dismiss or for summary judgment with respect to the FDCPA claim is denied.

B.   Invasion of Privacy Claim

Plaintiff seeks to hold Alegis liable for the actions of the other debt collectors in their abusive attempts to collect a debt that plaintiff did not owe.[4]  Plaintiff relies on the intrusion of seclusion theory of invasion of privacy.  To establish such a claim, a plaintiff must prove three elements: (1) an intentional intrusion, physical or otherwise, (2) upon the plaintiff's solitude or seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable person.  Mauri v. Smith, 324 Or. 476, 483 (1996).

There is no evidence that Alegis contacted plaintiff directly, but plaintiff contends Alegis aided and abetted the highly offensive intrusion of other debt collectors. While some of the

---

[4]Plaintiff refers to allegations such as harassing her when her son was dying, but Alegis was not involved in the debt collection until nearly six months after plaintiff's son's death.

9 - ORDER

egregious conduct alleged by plaintiff could not have involved Alegis or the debt collectors they assigned the debt to, plaintiff does allege that Encore threatened to have Plaintiff criminally prosecuted and jailed if she did not pay the account. While, plaintiff should generally expect contact to collect a debt, her allegations that no debt was owed combined with at least some egregious conduct is sufficient at this stage of the proceedings. The facts concerning the claim need further development. The issue of aiding and abetting needs to be further addressed. Even though there is no evidence at this point that Alegis knew a debt was not owed or that it was disputed, the record is insufficient as to whether it aided and assisted tactics such as the threat of criminal prosecution.[5]

## CONCLUSION

For the reasons stated above, defendant Alegis Group's motion to dismiss or for summary judgment (#57 ) is denied.

DATED this  19th  day of April, 2007.

                                                s/ Michael R. Hogan
                                            United States District Judge

---

[5] To be liable under an aiding and assisting theory, Alegis must have participated in, aided, or procured the intrusion. See Paur v. Rose City Dodge, 249 Or. 385, 389 (1968). In addition, Alegis must have acted with the requisite mental state- i.e., it must have intended the intrusion, see Brown v. Far West Federal, 66 Or.App. 387, 390 (1984), or at least understood that the invasion would be committed by the Encore when it aided the debt collector. See Gymnastics USA v. McDougal, 92 Or.App. 453, 458 (1988).

10 - ORDER