IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BEVERLY HILBURN,                    )
                                   )
                  Plaintiff,        )        Civil No. 06-6096-HO
                                   )
         v.                         )        <u>ORDER</u>
                                   )
ENCORE RECEIVABLE MANAGEMENT,       )
INC., et al.,                       )
                                   )
                  Defendants.       )
_____)

Plaintiff alleges claims for violation of the Fair Debt Collection Practices Act, negligence, defamation, invasion of privacy, and intentional infliction of emotional distress against defendants Sears, Roebuck and Company, Citibank USA NA, Alegis Group, and Encore Receivable Management, Inc.

Plaintiff specifically alleges as follows:

Plaintiff owed a debt to Sears for items she purchased and charged to her Sears charge account ("account" or "the account").
Plaintiff became disabled and Sears Credit Protection Plan paid the entire balance of the account.
...
Plaintiff owes no money to any Defendant.
Citibank has acquired the account from Sears.
Citibank and/or Sears sold to a trust the rights to payment of all alleged debts owed by Plaintiff.

Citibank has retained the right to collect payment from Plaintiff.

Citibank has reported to the collection agencies that Plaintiff has an outstanding balance on the account.

Plaintiff has disputed to every Defendant that she has an outstanding balance on the account; however, each Defendant has attempted to collect from Plaintiff after she disputed owing any amount without Defendant verifying the validity of the debt.

On or about December 7, 2004 Plaintiff's son suffered a heart attack in Plaintiff's home.

When Plaintiff was attempting to dial '911' Citibank telephoned Plaintiff.

Plaintiff informed Citibank that she could not speak to [the] collection agency because she needed to call 911.

After Plaintiff hung up on Citibank and before she could dial 911, Citibank called Plaintiff again to collect on the account, interfering with Plaintiff's ability to obtain medical help for her dying son.

Plaintiff's son died before the ambulance arrived.

During the following days while Plaintiff's family would visit to mourn Plaintiff's son's death, Citibank would call repeatedly with the intention of annoying and harassing Plaintiff in an attempt to collect on the account.

Defendant, Encore, has threatened to have Plaintiff criminally prosecuted and jailed if she did not pay the account.

Due to the actions of each Defendant, Plaintiff has suffered severe emotional distress.

Defendant Alegis has been sold, assigned or otherwise transferred the right to collect the alleged debt from Plaintiff.

Defendant Alegis has been informed that Plaintiff does not owe the debt it is attempting to collect, yet Alegis continues to attempt to collect the debt by assigning the debt to different collection agencies.

First Amended Complaint (#43) at ¶¶ 9-26.

Defendants Citibank and Sears move for an order compelling plaintiff to arbitrate her claims against Citibank and Sears.

Plaintiff's claims against Citibank and Sears arise out of alleged attempts collect a debt on plaintiff's Sears credit card.

2 - ORDER

The account was acquired by Citibank in November of 2003.  After acquiring the account, Citibank notified plaintiff of changes to the card agreement, including the addition of an arbitration clause.  In addition, while the account was held by Sears, the card agreement with Sears contained an arbitration clause.

The Sears card agreement provided that the cardholder agreed to its terms upon use of the account.  The arbitration clause provided that all claims and controversies of any nature arising out of or related to the agreement, or any previous agreement with Sears or its predecessors, shall be resolved, upon either parties' election, by arbitration.  Ex. 2 attached to Declaration of Adam Pogwist (#87).  The initial Sears agreement allowed for a change in terms of the agreement.  Similarly, Citibank included a broad arbitration provision in its cardholder agreement upon acquiring plaintiff's account, as well as allowing for a change in terms. See Ex. 1 attached to Declaration of Jamie Moilanen (#74).  The Citibank agreement also provided a choice of law provision applying South Dakota Law and federal law.  Plaintiff did not opt out of the arbitration provision provided in the change-in-terms of 2003. Plaintiff continued to use her card.

Plaintiff opposes arbitration arguing that: (1) Sears has not presented evidence of any arbitration clause applicable to it; (2) Citibank did not have a legal right to "unilaterally" change the terms of the card holder agreement; (3) the arbitration clause is unconscionable; and (4) that there are "grave" concerns about the

3 - ORDER

impartiality of at least one of the private arbitration firms listed.

Sears has demonstrated that its agreement with plaintiff did contain an arbitration clause. Moreover, that clause applied to Sears successors and assigns.

The agreement plaintiff had with Sears permitted Sears to change the terms and to assign the account to another creditor. See Ex. 1 and 2 to Pogwist Declaration. Both Sears and Citibank retained the right to change the terms of the agreements with plaintiff. The Sears contract is governed by Arizona law, id., and the change in law provision has already been found to be broad enough to permit the addition of the arbitration clause. See Hutcherson v. Sears Roebuck & Co., 342 Ill.App.3d 109, 118 (2003). Therefore, plaintiff was required to arbitrate even before Citibank acquired the account and Citibank also included such a provision upon acquiring the account.

Moreover, plaintiff agreed to the addition of the arbitration provision in both the Sears agreement and the Citibank agreement by failing to opt-out and continuing to use the account. See Karmolinski v. Equifax Information Services, LLC., 04-1448-AA, (order dated October 27, 2005) (attached to Reply (#86) at p. 5) (Citibank card holder agrees to arbitration term by using card).

Plaintiff next contends that enforcement of an arbitration provision would be unconscionable because it is a contract of

adhesion under either Oregon law or South Dakota law, because it is too costly to arbitrate, and because of its ban on class actions.

Under the Federal Arbitration Act, a court may refuse to enforce an arbitration agreement upon such grounds as exist at law or equity for revocation of a contract. The facts underlying a determination of unconscionability are reviewed for any evidence. Whether those undisputed facts constitute unconscionability is a question of law to be assessed on the basis of facts in existence at the time the contract was made. Best v. U.S. National Bank, 303 Or 557, 560, 739 P2d 554 (1987).

Unconscionability in Oregon, as elsewhere, has both a procedural and a substantive component. W. L. May Co. v. Philco-Ford Corp., 273 Or 701, 707-08 (1975); Dex Media, Inc. v. National Management Services, 210 Or App 376, 387 n. 4 (2007). Procedural unconscionability generally refers to the conditions of contract formation and

> focuses on two factors: oppression and surprise. Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the terms.

ACORN v. Household Intern., Inc., 211 F Supp 2d 1160, 1168 (ND Cal 2002). Substantive unconscionability generally refers to the terms of the contract as opposed to the circumstances of formation and "focuses on the one-sided nature of the substantive terms." Id. at 1169. In some jurisdictions, unconscionability requires both

5 - ORDER

components. See, e.g., id. at 1168. In others, the courts may invalidate a contract or a contract term on either procedural or substantive grounds. See, e.g., Luna v. Household Finance Corp. III, 236 F Supp 2d 1166, 1174 (W.D. Wash 2002). Oregon has not adopted a formal template. Rather, the analysis is described as follows:

> The primary focus ... appears to be relatively clear: substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable. Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue.

Carey v. Lincoln Loan Co., 203 Or App 399, 422-23 (2005), rev allowed, 341 Or 449 (2006). However, the agreement with Citibank provided that the applicable law is the law of South Dakota. Nonetheless, South Dakota law is substantially similar. See Johnson v. John Deer Co., 306 N.W.2d 231, 236-37 (S.D. 1981).

Plaintiff argues that the threat of closing the account provided plaintiff with a lack of any meaningful choice, but plaintiff could have opted out of the agreement and paid off the account under the terms of the agreement that previously existed. In addition, as noted above, plaintiff's agreement was already subject to arbitration. Moreover, even under Oregon law "an adhesion contract is not considered unconscionable. Such contracts are fully enforceable provided they are not ambiguous." Fink.

Guardsmark, LLC, 2004 WL 1857114, at *4 (D. Or. Aug. 19, 2004).

South Dakota law allows the change. See SDCL § 54-11-10.

Plaintiff also asserts that the high cost of arbitration renders the arbitration clause unconscionable. Where a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs. Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000).

The agreement in this case provides that Citibank will advance plaintiff the fees for arbitration for good cause. Citibank has agreed to advance the fees based on plaintiff's economic situation.

In Anders v. Hometown Mortgage Serv., Inc., 346 F.3d 1024, 1028-29 (11th Cir. 2003) the court reasoned:

> But "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Id. at 92, 121 S.Ct. at 522. Anders submitted an affidavit in which he said: "I simply cannot afford to pay the $3,500.00 to $6,000.00 that I have determined will be required to arbitrate my claims," and in that affidavit he substantiated his inability to do so by detailing his assets, debts, income, and expenses; he even attached a copy of his credit report. That is not enough, in view of the circumstances.
>
> The agreement provides that arbitration will be in accordance with the American Arbitration Association Rules for Commercial Financial Disputes. Those rules specify that "the AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees." AAA Rules for Commercial Financial Disputes, Rule 46. They also provide that all other expenses of the arbitration, including travel, costs of witnesses, and fees of the arbitrator, while ordinarily "borne equally by the parties" may be assessed by the

7 - ORDER

arbitrator against any specified party. Id. Rule 47. We need not decide if those provisions of the AAA rules alone are enough to preclude a finding that arbitration would be prohibitively expensive for Anders, because there is more.

The more is that Hometown Mortgage stipulated in the district court that if Anders was unable to pay for arbitration and his inability would preclude arbitration, Hometown Mortgage "would agree to bear the administrative fees which Anders would otherwise be required to pay in the institution of an arbitration action." At oral argument before us, Hometown Mortgage's counsel said the stipulation means her client will pay "what we need to pay to make it fair for Mr. Anders," and the arbitrator will decide how much Hometown Mortgage should pay of Anders' costs. Counsel agreed that Hometown Mortgage's stipulation should be construed expansively, and we interpret her representations to us to mean that no declaration of invalidity because of prohibitive costs is necessary before her client will help with Anders' costs. [footnote omitted] Given Hometown Mortgage's willingness to bear the costs of arbitration that Anders is unable to afford (as the arbitrator determines), it follows that Anders has not demonstrated that arbitration would be prohibitively expensive for him.

Citibank's offer to advance the arbitration fees prevents plaintiff from arguing prohibitive cost unconscionability.[1]

Plaintiff next argues that the prohibition on class action suits in the agreement makes the arbitration clause unconscionable. If Oregon law applied, plaintiff would be correct even though this is an individual case. See Vasquez-Lopez v. Beneficial Oregon, Inc., 210 Or.App. 553, 572 (2007) (the class action ban is unilateral in effect and, more significantly, it gives defendant a virtual license to commit, with impunity, millions of dollars'

---

[1]Plaintiff asserts that an offer to pay for arbitration does not change the defect in the arbitration clause, but plaintiff fails to acknowledge the agreement specifically allows for Citibank to pay.

8 - ORDER

worth of small-scale fraud); <u>id</u>. ("the fact that plaintiffs have not filed a class action is irrelevant; the unconscionability of a contract is gauged as of the time it is formed.").

However, under South Dakota law, the class action waiver does not render the arbitration clause unenforceable. <u>See, e.g.,</u> <u>Egerton v. Citibank, N.A.</u>, 2004 WL 1057739, at *3 (C.D.Cal. 2004) (construing South Dakota law and finding no case law to support unconscionability in South Dakota). The agreement provides that South Dakota law applies and plaintiff has not provided a conflict of laws analysis showing Oregon law must be applied.

Finally, plaintiff asserts that one of the arbitration firms designated in the arbitration clause is biased in favor of financial institutions. However, plaintiff can elect one of the other two firms listed. Accordingly, the arbitration provision is not unconscionable and the motion to compel arbitration is granted.

<u>CONCLUSION</u>

For the reasons stated above, defendants Sears and Citibank's motion to compel arbitration and stay this action pending completion of arbitration (#72) is granted.


DATED this __11th__ day of July, 2007.

                              __s/ Michael R. Hogan__
                              United States District Judge

9 - ORDER